UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LONNY K. McKENZIE,                    :     Case No. 1:09-cv-341
                                      :
        Plaintiff,                    :     Judge Sandra S. Beckwith
                                      :     Magistrate Judge Timothy S. Black
vs.                                   :
                                      :
COMMISSIONER OF                       :
SOCIAL SECURITY,                      :
                                      :
        Defendant.                    :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

        This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to disability insurance benefits ("DIB") and supplemental security income

("SSI").  (*See* Administrative Transcript ("Tr.") (Tr. 19-29) (ALJ's decision)).

                                      **I.**

        On December 20, 2005, Plaintiff filed applications for DIB and SSI, alleging that

he became disabled on December 31, 2002, due to chronic venous insufficiency and a

history of substance abuse.  (Tr. 77-79, 416).  Plaintiff's applications for DIB and SSI

were denied at the initial and reconsideration levels of review.  (Tr. 52-57, 420-426).

_____

        [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

Upon denial of Plaintiff's claims on the state agency levels, he requested a hearing *de novo* before an ALJ. A hearing was held on May 19, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 436-470). A vocational expert, Eric Pruitt, was also present and testified. (*Id.*)

On September 24, 2008, an ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs. (Tr. 16-29). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 8-11). Subsequently, Plaintiff filed this civil action for judicial review.

Plaintiff was 48 years old at the time of his alleged onset of disability and 54 years old at the time of the ALJ's decision. (Tr. 27). Plaintiff is a high school graduate and has past relevant work experience at a paper company as a trimmer operator, paper processing helper, and sheer operator. (Tr. 130, 440-41, 463).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 31, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following "severe" impairments: chronic venous insufficiency in the left leg; and history of substance abuse with continuing alcohol use (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: lift up to fifty pounds occasionally and twenty pounds frequently; sit eight hours; and stand/walk up to one hour a day, get up and move around every hour and sit ten to fifteen minutes later.  [This was assessed as a light range of exertion per Vocational Expert's testimony at step five.]  The doctor opined that this person is able to sit eight hours during an eight-hour workday; and stand/walk one hour during an eight-hour workday.  The doctor opined that he needs to get up and move around every hour and he could sit again after ten to fifteen minutes.  She added that the patient was able to lift/carry up to fifty pounds occasionally.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on June 27, 1954.  He was forty eight years old at the alleged onset date and considered a younger individual.  He is now fifty-four years old and closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-28).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 29).

On appeal, Plaintiff argues that: (1) the ALJ erred when he failed to follow the treating physician rule; (2) the ALJ erred when he relied upon flawed vocational expert testimony; and (3) the ALJ erred when he failed to properly evaluate Plaintiff's credibility. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For his first assignment of error, Plaintiff maintains that the ALJ erred when he failed to follow the treating physician rule.[2]

The relevant medical record reflects that:

### *Pre-Onset Date*

In the fall of 1999, Plaintiff was taken to the emergency room because his right leg was swollen and his doctors suspected he had deep vein thrombosis ("DVT").[3] (Tr. 222). Plaintiff was diagnosed with acute DVT of the left superficial femoral vein, and a history

---

[2]    "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).

[3]    DVT is a blood clot that forms in a vein deep in the body. Blood clots occur when blood thickens and clumps together. Most deep vein blood clots occur in the lower leg or thigh. A blood clot in a deep vein can break off and travel through the bloodstream. The loose clot is called an embolism, or PE. PE is a condition that occurs when an artery in your lung becomes blocked. In most cases, the blockage is caused by one or more blood clots that travel to your lungs from another part of your body. Most clots originate in your legs, but they can also form in arm veins, the right side of the ear or even at the tip of a catheter placed in a vein.

of inguinal hernia and hypertension. (Tr. 221). Plaintiff was treated with intravenous heparin and Coumadin,[4] and his condition improved. (*Id.*) Plaintiff was discharged from the hospital and told to follow-up with his family doctor. (Tr. 222).

In January 2000, Plaintiff underwent a leg inguinal hernia repair with Dr. Gary Cobb because he had a very large left inguinal hernia with an incarcerated bowel. (Tr. 239). Plaintiff tolerated the procedure well. (Tr. 240). Plaintiff returned to Dr. Cobb the following month and he was healing well. (Tr. 281).

In January 2001, Plaintiff returned to Dr. Cobb complaining of an ulcer on his left leg. (Tr. 279). Dr. Cobb prescribed unna boot therapy (*i.e.*, a specialized gauze bandage used to treat ulcers). (*Id.*)

Plaintiff went to the emergency room on May 18, 2001, complaining that he had irritated areas on his leg. (Tr. 243). Upon examination, Plaintiff's left leg was non-tender but his leg had gross edema and hemosiderin deposits. (*Id.*) Plaintiff had a full range of motion in his left leg and his neurovascular system was normal. (*Id.*) Plaintiff was diagnosed with venous insufficiency and chronic stasis ulcers. (*Id.*) Plaintiff followed-up with Dr. Cobb on May 22, 2001. (Tr. 280). Dr. Cobb prescribed unna boot therapy, which helped his condition. (*Id.*) Plaintiff returned to Dr. Cobb in June 2001, and Dr. Cobb noted that Plaintiff continued to do well with his unna boot therapy and that his leg was healing nicely. (*Id.*)

---

[4] Coumadin is commonly referred to as a "blood thinner" that prevents clots from forming and is often given to patients following a heart attack or stroke.

On December 30, 2001, Plaintiff went to the emergency room complaining that his left calf was swollen. (Tr. 244). Upon examination, Plaintiff had edema[5] and superficial cellulitis[6] in his lower left leg. (Tr. 246, 248). Plaintiff's neurovascular system was intact. (Tr. 246). Plaintiff underwent a duplex venous sonography of the left lower leg. (Tr. 250). The testing showed that Plaintiff had thrombosis in the superficial femoral vein and popliteal vein. (*Id*.) Plaintiff's left leg was dressed, and he was given Keflex and Percocet. (Tr. 245). Plaintiff was told to follow-up with his family doctor. (*Id*.)

On August 24, 2002, Plaintiff returned to the emergency room, complaining of pain and swelling in his lower left leg. (Tr. 256). Upon examination, Plaintiff had marked swelling with changes of chronic venous insufficiency. (*Id*.) Plaintiff had a sore on his left mid-calf and moderate redness in his upper calf. (*Id.*) Plaintiff was diagnosed with lower right leg cellulitis and prescribed Keflex and Tylenol #3. (*Id*.) Plaintiff was told not to bear weight on his left leg for 6 days. (Tr. 255).

The following month, Plaintiff returned to the hospital, complaining that he had a wound on his lower left leg. (Tr. 266). Upon examination, Plaintiff had two ulcers with shallow bases. (*Id*.) Plaintiff's left foot was pink and warm. (*Id*.) Plaintiff was diagnosed with lower left leg venous stasis ulcers and was given pain medication. (*Id*.)

---

[5] A local or generalized condition in which the body tissues contain an excessive amount of fluid.

[6] A spreading bacerial infection of the skin, usually caused by streptococcal or staphylococcal infections, that results in severe inflammation with erythema, warmth, and localized edema. The extremities, especially the lower legs, are the most common sites.

On October 7, 2002, Plaintiff saw Dr. Aimee Richmond for a basic medical evaluation. (Tr. 271). Dr. Richmond diagnosed Plaintiff with chronic alcoholism and referred him to Alcoholics Anonymous. (*Id*.) That same day, Dr. Richmond completed a functional capacity assessment, wherein she opined that Plaintiff was ultimately unemployable. (Tr. 273). Specifically, Dr. Richmond opined that Plaintiff could sit for 8 hours with his leg propped up during an 8-hour workday, but could only sit for one hour with his legs down and that he could stand and walk for 45 minutes. (*Id*.) Further, Dr. Richmond opined that Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently, but that Plaintiff was extremely limited in bending and repetitive foot movements and markedly limited in pushing and pulling. (*Id*.) Dr. Richmond also certified that Plaintiff was a medication-dependent person who required continuous prescriptions of Maxzide and Lexapro. (Tr. 275).

Plaintiff returned to Dr. Richmond in November 2002, and he had multiple ulcers on his leg. (Tr. 271). Dr. Richmond referred Plaintiff back to Dr. Cobb for treatment. (*Id*.)

### Post-Onset Date: December 31, 2002

In February 2003, Dr. Cobb noted that while Plaintiff still had venous stasis problems in his left leg, his condition had markedly improved. (Tr. 291). Dr. Cobb prescribed support hose and told Plaintiff to return on an as needed basis.[7] (*Id*.)

---

[7] Included in Dr. Cobb's records is an undated, unsigned report, stating that Plaintiff had been treated on and off for left leg venous stasis ulcers since 2001, but that he had not been compliant with treatments. (Tr. 278). The report stated that Plaintiff was released from follow-up care in April 2003 and given a prescription for support hose. (*Id*.)

In April 2003, Plaintiff was diagnosed with a left scrotal mass and underwent a left radical inguinal orchiectomy with Dr. Martin Walsh. (Tr. 293, 306-07). Plaintiff followed-up with Dr. Martin one week after the operation and was doing well. (Tr. 297). Plaintiff returned to Dr. Martin in early May, and both Dr. Martin and Plaintiff were very pleased with the results and his progress. (*Id.*)

On May 7, 2003, Dr. Ellin Cusack Frair, a state agency physician, reviewed Plaintiff's medical records at the request of the state Disablity Determination Services ("DDS"), and opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and could stand or walk 6 hours in an 8-hour workday, and could sit 6 hours in an 8-hour workday. (Tr. 286). Dr. Frair opined that Plaintiff could not balance and could only frequently climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 287). Dr. Frair opined that Plaintiff's allegations of disability were not supported because the medical records showed that his leg ulcerations had healed and that he only needed to wear support hose to improve his circulation. (Tr. 289). Dr. Frair also noted that Plaintiff was not compliant with his treatment. (*Id.*)

Plaintiff saw Dr. Richmond on June 13, 2003, complaining that his left leg was very swollen. (Tr. 300). Upon examination, Plaintiff had edema on both legs and Dr. Richmond referred Plaintiff back to Dr. Cobb. (*Id.*)

On August 19, 2005, Plaintiff saw Dr. C. Herbert Schapera for a consultative medical examination at the request of the state DDS. (Tr. 312-14). On examination,

Plaintiff was massively obese and although he ambulated with a slight limp, he did not require the use of ambulatory aids. (Tr. 312). Plaintiff's lower left leg was swollen, tender, and black in color from the lower half of the calf to just below the ankle. (Tr. 314). Plaintiff did not have varicose veins or stasis ulcers. (*Id*.) Plaintiff's spinal and upper extremity ranges of motion were normal. (Tr. 313). Plaintiff's neurological functions were intact. (*Id*.) Dr. Schapera diagnosed Plaintiff with morbid obesity, chronic venous insufficiency in the left leg, and hypertension. (Tr. 314). Dr. Schapera opined that Plaintiff's obesity contributed to his symptoms, and that weight loss would diminish his complaints. (*Id*.) Dr. Schapera opined that Plaintiff was capable of performing mild amounts of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. (*Id*.) In addition, Dr. Schapera noted that Plaintiff had no difficulty reaching, grasping, and handling objects. (*Id*.)

In September 2005, Dr. Jerry McCloud, a state agency physician, reviewed Plaintiff's medical records at the request of the state DDS and opined that Plaintiff could perform a full range of light exertional work.[8] (Tr. 334-340). Dr. McCloud opined, however, that Plaintiff could not balance and could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 335). Dr. Walker Holbrook, another state agency

---

[8]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even thought the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

physician, reviewed Plaintiff's medical records at the request of the state DDS in December 2005, and affirmed Dr. McCloud's opinion. (Tr. 340).

Plaintiff saw Dr. Aleda Johnson at the Middletown Community Health Center on January 18, 2006, complaining that his left leg was swollen. (Tr. 408). Upon examination, Plaintiff's left leg was swollen from the knee down. (*Id*.) Plaintiff's left calf was tender. (*Id*.) Plaintiff was given Tylenol #4 and he was told to undergo a doppler scan to rule out DVT. (Tr. 409). The doppler scan showed soft tissue edema and chronic thrombosis in the femoral vein, popitean vein, and in some of the calf veins. (*Id*.) There was no evidence of acute DVT. (*Id*.) Dr. Johnson prescribed a series of Coumadin treatments. (Tr. 407).

Plaintiff returned to Dr. Johnson the following month for a follow-up examination. (Tr. 403). Upon examination, Dr. Johnson noted that Plaintiff's lower left leg had improved. (*Id*.) Dr. Johnson continued Plaintiff's Coumadin prescription and told him to return in 5 to 6 weeks, or as needed. (*Id*.) Plaintiff returned on March 9, 2006, complaining that his leg needed to be examined. (Tr. 401). Upon examination, Plaintiff's left lower leg was swollen but Dr. Johnson did not change his treatment plan. (*Id*.) Similar findings occurred on a follow-up examination in early April. (Tr. 399).

Plaintiff saw Dr. Johnson again on April 26, 2006, requesting that Dr. Johnson fill out disability papers. (Tr. 398). Dr. Johnson filled out an impairment questionnaire, wherein she opined that Plaintiff's prognosis was fair. (Tr. 390). Specifically, Dr.

Johnson noted that Plaintiff had a limited range of motion in his left leg, tenderness in his left leg and lower back, muscle spasms in his right lower leg, and redness and swelling in his left leg. (Tr. 390-91). Dr. Johnson also noted that Plaintiff had an abnormal gait, but stated that he did not require an assistive device. (*Id*.) Dr. Johnson opined that in an 8-hour workday, Plaintiff could sit for 8 hours, and could stand and walk for up to 1 hour. (Tr. 393). Dr. Johnson opined that Plaintiff would need to get up and move around every hour before he could sit down for 10 to 15 minutes. (*Id*.) Dr. Johnson also opined that Plaintiff's left leg should be elevated when he was sitting. (Tr. 394). In addition, Dr. Johnson opined that Plaintiff could occasionally lift up to 50 pounds and could occasionally carry up to 20 pounds. (*Id*.)

Plaintiff returned to Dr. Johnson in May 2006 for a follow-up examination, and Dr. Johnson adjusted his Coumadin prescriptions and told him to return in a month. (Tr. 385). Plaintiff returned in June for another follow-up. (Tr. 382). Upon examination, Plaintiff had a scab on his left leg. (*Id*.) Plaintiff's Coumadin prescription was continued, and he was given Tylenol #4 for the pain. (*Id*.)

Plaintiff followed-up with Dr. Johnson again on July 6, 2006. (Tr. 378). Upon examination, Plaintiff had some hyperpigmentation and minimal swelling in his left leg, but his foot was better. (Tr. 378, 381). Dr. Johnson increased Plaintiff's Coumadin prescription and told him to return in 6 weeks. (Tr. 381).

On October 24, 2006, Dr. Johnson wrote a "To Whom It May Concern" letter in which he stated that Plaintiff was totally disabled without consideration to any past or present drug and/or alcohol use. (Tr. 370-71). Plaintiff returned in January 2007 for a follow-up examination and saw Dr. Shazia Khan. (Tr. 364). Upon examination, two-thirds of Plaintiff's left leg was purplish. (*Id.*) Plaintiff did not have any open wounds, bleeding, or exudates (*i.e.*, fluid that filters from the circulatory system into lesions or areas of inflammation). (*Id.*) Plaintiff's Coumadin prescription was adjusted again. (*Id.*) Plaintiff returned the following month and his left leg was non-tender and there was no signs of edema. (Tr. 363). Plaintiff's Coumadin prescription was adjusted. (*Id.*)

Plaintiff returned twice in early March, and Dr. Khan continued his current dose of Coumadin. (Tr. 358, 360). On March 22, 2007, at the request of Plaintiff and his attorney, Dr. Khan completed a disability impairment questionnaire. (Tr. 347-355). Dr. Khan opined that Plaintiff's prognosis was fair if he was consistent with treatment. (Tr. 347). Dr. Khan opined that in an 8-hour workday, Plaintiff could sit for up to an hour and stand or walk for up to an hour. (Tr. 349). Dr. Khan opined that Plaintiff would need to get up and move around every 1 to 2 hours before he could sit again for 0 to 20 minutes. (Tr. 349-350). Dr. Khan opined that Plaintiff could lift and carry up to 50 pounds, but would have problems doing repetitive reaching, handling, fingering, or lifting. (Tr. 350).

Plaintiff returned to Dr. Khan on June 8, 2007 for a follow-up examination. (Tr. 344). Upon examination, Plaintiff had three open ulcerative lesions on his lower left leg.

(*Id*.)  Dr. Khan continued Plaintiff's prescriptions and referred him to a surgeon for a consultation.  (*Id*.)  Plaintiff returned later that month and his left leg was swollen and purplish.  (Tr. 342).  Plaintiff also had open  lesions on his left leg.  (*Id*.)  Dr. Khan continued his medications and urged him to see a surgeon as soon as possible.  (*Id*.) Plaintiff returned in October but had not seen a surgeon.  (Tr. 412).  Plaintiff had not checked his Coumadin levels and Dr. Khan told him he would not get another prescription until he did.  (*Id*.)

### *Plaintiff's Administrative Testimony*

Plaintiff testified that he stopped working in August 2002 and that he had applied to some jobs since then, but that he had not gotten hired.  (Tr. 440-41).  Plaintiff recounted his left leg condition, and stated that it gave him constant pain.  (Tr. 441-43).  Plaintiff also recounted his lower left groin hernia surgery in 2000.  (*Id.*)  Plaintiff stated that although he had high blood pressure, medication had brought it down to almost normal levels.  (Tr. 446).  Plaintiff testified that he only took over-the-counter pain medication. (*Id*.)  Additionally, Plaintiff testified that he lived with his adult his son who bought him a cane, and that he used it on and off for about six months.  (Tr. 439, 449).  Plaintiff testified that he cooked, vacuumed little areas, made his bed, visited family and friends, watched T.V., fished, listened to music, read, and generally piddled around the house. (Tr. 449-51).  He testified that he could drive a little every day or at least once every other day and that he had some problems with alcohol but that he had reduced his drinking.

(Tr. 440, 444-45).

### *Vocational Expert Testimony*

Mr. Eric Pruitt testified as a vocational expert ("VE") at the administrative hearing. (Tr. 405, 438).  The VE classified Plaintiff's past jobs at the paper factory as medium, unskilled jobs.  (Tr. 463-64).  The ALJ asked the VE if there were any jobs that a hypothetical individual could perform if he had Plaintiff's vocational profile, and could only lift or carry 50 pounds occasionally and 20 pounds frequently, could sit for 8 hours, stand and walk for up to an hour, and who had to get up and move about every hour and sit every 10 to 15 minutes later.  (Tr. 465-66).  The VE testified that the hypothetical individual would be able to perform 8,000 unskilled, light exertional job, including box sealing inspector, carton packaging machine tender, and inking machine tender, and 6,000 unskilled, sedentary exertional jobs, including automatic grinding machine operator, packing machine inspector, and small parts assembler.  (Tr. 466-67).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not adopt all of Dr. Johnson's limitations.[9]  (Doc. 7 at 12-14). Although the ALJ must give consideration to the opinions of medical sources in evaluating whether a plaintiff is disabled, the final responsibility for deciding a plaintiff's

---

[9]    For example, Plaintiff argues that the ALJ should have adopted Dr. Johnson's opinion that Plaintiff would be absent from work about two or three times a month, that he would need his leg elevated when he was sitting, that he would require unscheduled breaks about every 15 minutes, and that he would need to rest 20 to 30 minutes before returning to  work. (Doc. 7 at 13).

specific work-related or RFC limitations is reserved to the Agency. *See* 20 C.F.R.

§§ 404.1527(e)(2), 416.927(e)(2); SSR 96-5p, 1996 WL 374183 (1996); *Diaz v. Chater*,

55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Schmidt v. Astrue*, 496 F.3d 833, 845 (7th

Cir. 2007) (In determining claimant's RFC, the ALJ was "not required to rely entirely on

a particular physician's opinion or choose between the opinions of any of the claimant's

physicians.").

An ALJ may give little weight or reject a treating physician's opinion entirely

where the opinion is unsupported by the clinical findings or inconsistent with the other

evidence of record. 20 C.F.R. §§ 404.1527, 416.927; *see Bogle v. Sullivan*, 998 F.2d 342,

347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not

bound by the treating physician's opinions, and that such opinions receive great weight

only if they are supported by sufficient clinical findings and are consistent with the

evidence."). Here, Drs. Johnson's and Khan's opinions were inconsistent and not entitled

to more weight than the ALJ gave them. For example, the opinions of Drs. Frair,

McCloud, and Holbrook suggest that Drs. Johnson's and Khan's assessments were overly

restrictive. (Tr. 286, 334-340). *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)

(explaining that state agency physicians are highly qualified physicians who are also

experts in social security disability evaluation); *see also* SSR 96-6p, 61 Fed. Reg. 34466

(1996) (explaining that the opinion of a state agency consultant may be entitled to greater

weight than a treating source); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651

(6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion). Drs. Frair, McCloud, and Holbrook reviewed all of Plaintiff's medical records and opined that Plaintiff was capable of sitting 6 hours in an 8-hour workday and standing or walking for 6 hours in an 8-hour workday. (Tr. 286, 334-340). These medical source opinions suggest that Drs. Johnson's and Khan's opinions were overly restrictive.

Furthermore, other medical evidence suggests that the ALJ was entirely justified in rejecting parts of Drs. Johnson's and Khan's opinions. For example, diagnostic testing ruled out DVT. (Tr. 266, 409). Plaintiff's leg ulcerations healed when properly treated (Tr. 289), and toward the end of his treatments, Plaintiff only required support hose and over-the-counter pain medication (Tr. 278, 446).

Other record evidence suggests that the ALJ gave appropriate weight to Drs. Johnson's and Khan's opinion. For example, Plaintiff's daily activities do not suggest that he is incapable of working. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."). Indeed, Plaintiff testified that he cooked, vacuumed little areas, made his bed, visited family and friends, watched television, fished, listened to music, read, and generally piddled around the house. (Tr. 449-51). Plaintiff testified that he could drive a little every day or at least once every other day. (Tr. 440). This evidence does not support Drs. Johnson's and Khan's opinions.

In addition to Drs. Johnson's and Khan's opinions being inconsistent with the record as a whole, the ALJ noted that their opinions were inconsistent with each other. Dr. Johnson opined that Plaintiff was able to sit for 8 hours in an 8-hour workday and that his left leg should be elevated when sitting. (Tr. 394). Dr. Khan opined that Plaintiff could only sit for an hour in an 8-hour workday. (Tr. 349). Plaintiff suggests that "the difference is likely explained by the fact that the form completed by Dr. Khan did not ask the doctor to separately consider [Plaintiff's] need to elevate his leg when sitting." (Doc. 7 at 14). However, this explanation does not address the difference between sitting one hour and eight hours. Therefore, the ALJ was entirely justified in rejecting portions of Drs. Johnson's and Khan's opinions because they were inconsistent with each other, as well as the record as a whole.[10]

## B.

For his second assignment of error, Plaintiff claims that the ALJ erred when he relied upon flawed vocational expert ("VE") testimony.

Plaintiff argues that the hypothetical question posed to the VE did not accurately reflect his alleged limitations. (Doc. 7 at 17). However, it is well-settled that an ALJ is "required only to incorporate into his hypothetical those limitations that he accepts as credible." *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

---

[10] Additionally, Drs. Johnson's and Khan's opinions were solicited by Plaintiff's counsel. The Seventh Circuit has noted that "[a]n ALJ [may] question a doctor's credibility [where] the doctor's opinion letter had been solicited by the claimant's counsel." *See Wilder v. Apfel*, 153 F.3d 799, 802 (7th Cir. 1998).

1993).  Therefore, the ALJ reasonably rejected the limitations he found unsupported, and, as such, those limitations were properly excluded from the hypothetical question.

In response to the hypothetical question, the VE testified that Plaintiff could perform 8,000 unskilled, light exertional job, including box sealing inspector, carton packaging machine tender, and inking machine tender, and 6,000 unskilled, sedentary exertional jobs, including automatic grinding machine operator, packing machine inspector, and small parts assembler.  (Tr. 466-67).  Plaintiff argues that the light exertional level exceeds his RFC and that he, therefore, should have been found capable of only sedentary work and thus, due to his age, found disabled according to grid rule 201.14.  (Doc. 7 at 15-17).  However, the VE was still able to identify light jobs Plaintiff could perform despite his limited RFC.  (Tr. 466-67).  Grid Rule 201.14 applies only to those age 50 and older who can *only* perform sedentary work.  *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics must exactly match the criteria in Grid Rules to trigger a disability finding).  Therefore, the ALJ reasonably used the grid rules concerning light work rather than sedentary work as a framework in finding Plaintiff was not disabled.  (Tr. 28).

Additionally, Plaintiff argues that the ALJ should not have relied on a VE, but instead should have relied on the Medical-Vocational Guidelines for sedentary work to direct a finding of disabled.  (Doc. 7 at 16).  Plaintiff's argument, however, is unavailing. The ALJ may not mechanically apply the Medical-Vocational Guidelines to direct

conclusions when an individual's exertional RFC does not coincide with the exertional criteria of any one of the external ranges, *i.e.*, sedentary, light, medium, as defined in 20 C.F.R. sections 404.1567 and 416.967. *See* SSR 83-12, 1983 WL 31253. Rather, when, as the case here, "a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for [his] decision, but must rely on other evidence to carry [his] burden." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Plaintiff was incapable of performing a full range of light work and had to alternate between sitting and standing. *See Walker v. Chater*, 117 F.3d 1421 (Table), 1997 WL 369445 (6th Cir 1997), citing *Wages v. Sec'y of Health & Human Services*, 755 F.2d 495 (6th Cir. 1985) ("a limitation that requires the claimant to alternate between sitting and standing, also known as a sit/stand option, may not be within the definition of sedentary work."). Therefore, the ALJ properly relied on the VE's opinion that Plaintiff could perform a significant number of jobs.

## C.

For his final assignment of error, Plaintiff claims that the ALJ erred in failing to evaluate Plaintiff's subjective complaints, pain, and credibility.

The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir. 1986) (any credibility determinations concerning subjective complaints of pain are the exclusive domain of the hearings

officer).

> The assessment of a claimant's assertions of disabling pain is made in light of factors set forth in 20 C.F.R. § 404.1529, summarized in a two-part test:
> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Infantado v. Astrue,* 263 Fed. Appx. 469, 475 (6th Cir. 2008) (quoting *Felisky,* 35 F.3d at 1038-39).

In the instant case, the objective medical evidence does not confirm Plaintiff's subjective complaints. "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *4 (July 2, 1996)).

The ALJ reasonably found, as discussed above, that the medical evidence and other record evidence suggested that Plaintiff's allegations of total disability were not credible. (Tr. 23-27). For example, Plaintiff's daily activities do not support the level of disability he alleged. (Tr. 440, 449-451). *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective

complaints were not credible in light of her ability to perform other tasks.").  Here, the

ALJ noted that Plaintiff had a wide range of daily activities, including cooking,

vacuuming little areas, making his bed, visiting family and friends, watching television,

fishing, listening to music, reading, driving, and generally piddling around the house.

(Tr. 449-451).  The ALJ reasonably found that these activities did not support Plaintiff's

allegations of disability (Tr. 23-27).  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[11]

Moreover, the opinions from Plaintiff's own doctors suggest that Plaintiff is not

entirely credible.  For example, Drs. Johnson and Khan opined that Plaintiff could stand

up to one hour in an 8-hour workday.  (Tr. 349, 393).  Plaintiff, however, testified that he

could only stand for 10 to 12 minutes.  (Tr. 447).  Plaintiff also testified that he sought

employment after he allegedly became disabled (Tr. 441), which the ALJ reasonably

noted suggested that even Plaintiff thought he was capable of working after he allegedly

became disabled.  (Tr. 27).  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (explaining

that the ALJ will consider all of the evidence presented when evaluating your subjective

complaints, including information about your work record).  In addition, as already

discussed above, the medical evidence does not support the level of disability Plaintiff

alleged.  (Tr. 23-27).  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).

Finally, Plaintiff's leg ulcerations healed when properly treated (Tr. 289), and

---

[11]    Plaintiff argues that his daily activities do not indicate that he would be able to work
in a competitve work environment.  (Doc. 7 at 18).  However, pursuant to SSR 96-7, the ALJ
may properly consider the claimant's daily activities when determining whether his allegations
are credible.

toward the end of his treatments, Plaintiff only required support hose to improve his circulation and over-the-counter pain medication (Tr. 278, 446). *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("Further, Mr. Blacha's use of only mild medication (aspirin) undercuts complaints of disabling pain").

As evidenced above, the ALJ reasonably found Plaintiff's testimony not credible. (Tr. 43-71). The ALJ gave specific reasons for finding Plaintiff not credible, and his credibility determination is supported by substantial evidence and should be upheld. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference.").

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to disability income benefits and supplemental security income, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

## IT IS SO RECOMMENDED.


Date:  April 12, 2010                              s/ Timothy S. Black
                                                   Timothy S. Black
                                                   United States Magistrate Judge

LONNY K. McKENZIE,           :      Case No. 1:09-cv-341
:
       Plaintiff,            :      Judge Sandra S. Beckwith
:      Magistrate Judge Timothy S. Black
vs.                     :
:
COMMISSIONER OF       :
SOCIAL SECURITY,      :
:
       Defendant.         :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).